# Murray et al. v. Horner et al., Commissioners

*M. P. Breene*, for plaintiffs.
*F. Harold Gates*, for defendants.

McCRACKEN, P. J., September 30, 1936.—The above action arises upon an application by plaintiffs to restrain defendants from printing upon the ballot to be submitted to the electorate at the coming election a question to determine whether or not liquor licenses shall be issued in the City of Franklin, this county and State. An answer has been filed and testimony taken.

The question to be determined involves an interpretation of section 502 of the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, which reads:

"Whenever electors equal to at least ten per centum of the highest vote cast for any office in the municipality or township at the last preceding general election shall petition the corporate authorities of the municipality or township for a referendum on the question of granting such liquor licenses, the respective corporate authorities shall cause a question to be submitted at the general or municipal election occurring at least sixty days thereafter, by

certifying a resolution, duly adopted, to the county commissioners for submission of such question, on the ballot or on voting machines, at such election in the manner provided by the election laws of the Commonwealth."

The petition submitted to the council of the City of Franklin contains 336 names. At the last general election held on November 5, 1935, the total vote for the office of city treasurer was 4,533 votes. The highest vote cast for any single candidate was 2,943 votes for James A. Murrin, a candidate for city council. It is contended that the phrase "at least ten per centum of the highest vote cast for any office in the municipality or township at the last preceding general election" has reference to the candidate receiving the highest number of votes. We are unable to agree with this contention.

In Endlich on Interpretation of Statutes, sec. 4, we find the following rule: "When, indeed, the language is not only plain but admits of but one meaning, the task of interpretation can hardly be said to arise". Also, in section 72 of the last-named authority we find: "If the language . . . admits of no doubt or secondary meaning, it is simply to be obeyed, without more". Likewise, in section 2 the same author states the law with respect to the interpretation of statutes as follows:

"The first and most elementary rule of construction is, that it is to be assumed that the words and phrases are used in their technical meaning if they have acquired one, and in their popular meaning if they have not, and that the phrases and sentences are to be construed according to the rules of grammar; and from this presumption it is not allowable to depart, unless adequate grounds are found, either in the context or in the consequences which would result from the literal interpretation, for concluding that that interpretation does not give the real intention of the Legislature. [It is said that the fixed technical meaning of a word must be given to it when used in a statute, unless the context shows an intention to use it in

a different sense; whilst, under a similar limitation words of common use are to be understood in their natural, plain, ordinary and genuine signification as applied to the subject matter of the enactment.]"

To our mind the last-quoted phrase is in no sense ambiguous, and what the legislature had in mind is plainly apparent from the context of section 502 of the act. There is nothing in the act under consideration, or the section now being discussed, which in any way indicates that the legislature intended any other meaning than that which is usually and ordinarily applied to the word "office". Blackstone defines "office" to be the "right to exercise a public or private employment, and to take the fees and emoluments thereunto belonging . . . whether public, as those of magistrates; or private, as of bailiffs, receivers": 2 Blackstone's Commentaries (Lewis' Edition) 36. Kent gives the following definition:

"Offices are another species of incorporeal hereditaments, and they consist in a right, and correspondent duty, to execute a public or private trust, and to take the emoluments belonging to it": 3 Kent's Commentaries (2d ed.) 362.

To contend that the word "office" as used in section 502 was intended by the legislature to mean "candidate" would in our opinion require giving the word a strained meaning and one which in ordinary usage would never be given. We know of no rule of law and we have been unable to find any, although diligent search has been made, which gives to the term "office" a technical meaning, and certainly there is nothing in the context of the statute under consideration which would lead one to conclude that this word was intended to have any meaning other than that which is usually assigned to it.

Objection has also been raised to the petition on the ground that it sets forth that petitioners are "citizens and residents of the City of Franklin." The section quoted uses the word "electors". While in our opinion it would

be better practice to follow the exact words of the section, we are not convinced that a failure to do so is fatal. It is true that one may be a resident and not a citizen, or he may be a resident and citizen but not an elector. However, in the final analysis, if it can be shown as a matter of fact that the persons who signed the petition are in fact electors the requirements imposed by the statute have been met. It appears in evidence that the petition contained 366 signatures and that of these 71 are not registered and, therefore, are not electors. In addition there are three duplications, which reduces the number of qualified signatures to 292. Assuming the contention that the legislature intended to require 10 percent of the highest number of votes cast for any candidate at the last preceding general election, it would require 294 signatures in order to have the question of granting liquor licenses submitted to the electorate. It will thus be seen that even accepting this version the petition is insufficient. . . .

### Decree nisi

And now, September 30, 1936, it is ordered, adjudged and decreed that the County Commissioners of the County of Venango be and are hereby enjoined and restrained from printing upon the ballot and submitting to the electors of the City of Franklin a form for a referendum under the provisions of the Act of July 18, 1935, supra, for the election to be held on Tuesday, November 3, 1936, and that the costs of this proceeding be paid by the County of Venango as hereinabove specified. The prothonotary will enter this decree nisi, the same to become final unless exceptions shall be filed thereto as provided by law.